

**ORDERED in the Southern District of Florida on August 2, 2013.**

_____
A. Jay Cristol, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(MIAMI DIVISION)

| | |
|---|---|
| In re: | CASE NO. 12-12139-BKC-AJC |
| JUAN CARLOS REYES, | CHAPTER 7 |
| Debtor. _____/ | |
| JAY H. SOLOWSKY, TRUSTEE | ADV. NO. 12-1962-BKC-AJC-A |
| Plaintiff, | |
| vs. | |
| JUAN CARLOS REYES, | |
| Defendant. _____/ | |

**FINDINGS AND FACT AND CONCLUSIONS OF LAW
ON THE CREDITOR'S §727 COMPLAINT OBJECTING TO DISCHARGE[1]**

THIS CAUSE came before the Court on July 9, 2013 at 2:00 P.M. to consider the

*Complaint Objecting to Discharge* filed by Creditor Jay H. Solowsky, Trustee, which sought to

---

[1] These constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

deny the Debtor his discharge under §§727(a)(2)(B) and 727(a)(4)(A). The Court has read and reviewed the record, and after much deliberation, finds no basis to deny the Debtor his discharge. The Court does not view the evidence presented as painting the Debtor as deceitful as the Plaintiff would have this Court believe him to be. The evidence, quite simply, shows an honest yet unfortunate Debtor who was handicapped in this case due to the lack of knowledge of the Debtor's prior counsel. But denial of this Debtor's discharge is not an appropriate remedy.

Upon careful and thorough consideration of the evidence adduced at trial, and upon the observation of the demeanor and candor of the Debtor, consideration of the documentary evidence presented, and the record history of this case, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

This case was commenced by the filing of a voluntary Chapter 7 bankruptcy petition for the Debtor Juan Carlos Reyes (the "*Debtor*") on January 27, 2012 (the "*Petition Date*"). Maria Yip was appointed to serve as the duly qualified Chapter 7 Trustee (the "*Trustee*"). Jay Solowsky is a creditor of the Debtor (the "*Creditor*" or "*Plaintiff*").

On September 27, 2012, the Plaintiff filed a §727 Complaint Objecting to Discharge and brought counts seeking denial of discharge under §727(a)(2)(B) and §727(a)(4)(A) (the "*Adversary Complaint*"). The Trustee also filed a §727 Complaint Objecting to Discharge (Case #12-1983-AJC, the "*Yip Adversary*"), but that case has been dismissed.

### *The Debtor's Former Counsel*

The Court would be remiss in discussing the procedural unfolding of this case without noting the Debtor's problems with former counsel. Former counsel's lack of knowledge of the law handicapped the Debtor throughout this proceeding, contributing to the escalation of

litigation in this case.

The Debtor was originally represented in the Main Case (Case #12-12139-AJC) by Ms. Ana D'Escoubet, Esq., F.B.N. 47014. Ms. D'Escoubet also appeared on behalf of the Debtor in the instant adversary, and also the Yip Adversary (Case #12-1983-AJC). Ms. D'Escoubet represented the Debtor through and including June 10, 2013, when this Court authorized her withdrawal [D.E. 28]. Ms. D'Escoubet filed her Motion to Withdraw as Counsel [D.E. 21] on May 23, 2013 – only one week before the originally-scheduled trial in this case. Ms. D'Escoubet's representation of the Debtor in this matter was neither accurate nor helpful.

The handicap that Ms. D'Escoubet's handling of this case inflicted upon the Debtor is made clear by the juxtaposition of what happened as between the Debtor and the Trustee after successor counsel appeared on behalf of the Debtor.[1] After the Debtor retained successor counsel, and based upon the facts of this case and her sound business judgment, the Trustee agreed to: (i) dismissal with prejudice of the Trustee's §727 complaint in the Yip Adversary (Case #12-1983-AJC); (ii) a 50% reduction in the monetary settlement amount that had been previously agreed to by the parties;[2] and (iii) that the 50% settlement would now constitute a global settlement of all issues in this case as between the Debtor and the Trustee.[3] But for prior counsel's handling of this case, all issues by and between the Debtor and the Trustee would have been resolved far sooner and with far less need for litigation for all involved.

### *The Debtor's Interest in Orange Watch, Inc., a Florida Corporation*

The Debtor is the sole shareholder of the entity Orange Watch, Inc., a Florida Corporation ("*Orange Watch*" or the "*Business*"). Orange Watch is in the business of procuring

---

[1] Robert A. Angueira, Esq., entered his Notice of Appearance [D.E. 23] on behalf of the Debtor on May 28, 2013.
[2] See, e.g., Order Granting Motion to Compromise Controversy [D.E. 130] entered on March 15, 2013, as compared to the Amended Order [D.E. 142] entered on July 3, 2013.
[3] See, e.g., Amended Order Granting Motion to Compromise Controversy [D.E. 142] at ¶2 and 9.

motorcycle parts for re-sale and export, and also procuring watches for re-sale and export. In the ordinary course of business, Orange Watch, Inc., regularly purchases and sells watches and motorcycle parts.[4] The Debtor testified at trial about the assets, liabilities, income and expenses of Orange Watch, and the Court finds the Debtor's testimony to be credible. Additionally, the Debtor has provided documentation and recorded information regarding his interest in Orange Watch, Inc.[5]

The Court finds that as of the Petition Date, Orange Watch, Inc., held the following Corporate Assets:

(a) **Corporate Bank Account.** As of the Petition Date, Orange Watch, Inc. was the sole owner of the Bank of America Checking Account #-5794 which had a petition-date balance of $11,314.28.[6] The entire amount of the petition-date balance was attributable to a wire-transfer deposit of $16,246.00 on January 24, 2012 from Kawa Motors, S.A. ("***Kawasaki of Ecuador***"), one of Orange Watch's customers.[7]

(b) **The $4,000.00 Receivable.** On October 18, 2011, Orange Watch, Inc., issued a check in the amount of $4,000.00 which was made payable to "Pines Ford."[8] This check was drawn on Orange Watch Inc.'s Bank of America Acct. #-5794.[9] This $4,000.00 from Orange Watch was used as a down payment for the Debtor's Brother and Redatex Corp. (the Debtor's Brother's Business) to get a Ford Explorer vehicle.[10] About six (6) months later, on April 27, 2012, Redatex Corp. repaid to Orange Watch, Inc., the $4,000.00 which had been given for the down-payment on the Ford

---

[4] Joint Pretrial Stipulation [D.E. 34] at ¶8.
[5] The Debtor has produced the following: two (2) years of pre-petition bank statements for the current Orange Watch Operating Account (Bank of America Acct. #-5794) (**Exhibits JJ, II** and **R**); four (4) years of pre-petition bank statements for the now-closed Orange Watch, Inc. Bank of America Acct. #-5804 (**Exhibit KK**); the 2010 Federal Income Tax Return, Form 1120 (**Exhibit Q**) for Orange Watch; the 2011 Federal Income Tax Return, Form 1120 (**Exhibit P**) for Orange Watch; and the 2012 Federal Income Tax Return, Form 1120 (**Exhibit NN**) for Orange Watch. These documents are in addition to the documents produced regarding the specific petition-date assets and liabilities of the business.
[6] **Exhibit R**, Statement dated 01/01/12-01/31/12 for the Bank of America Checking Acct. #-5794 held by Orange Watch, Inc.
[7] Id.
[8] **Exhibit U**, Statement dated 10/01/11-10/31/11 for the Bank of America Checking Acct. #-5794 held by Orange Watch, Inc. Page two (2) of this Statement reflects that Check #1187 for $4,000.00 cleared Orange Watch's bank account on October 19, 2011. Page six (6) of this Statement contains an image of the actual check showing that Check #1187 was paid to "Pines Ford."
[9] Id.
[10] **Exhibit V**, Retail Installment Contract dated 10/18/11 regarding Deal #619789 by and between Pines Ford Lincoln Mercury (as Seller) and Redatex Corp. and Ulises V. Reyes (as Buyers). The $4,000.00 down payment is reflected as a cash payment on Page 1 of this Contract.

Explorer. Specifically, Redatex Corp. issued Check #1246 for $4,000.00 which was made payable to Orange Watch.[11] Orange Watch deposited Check #1246 into its Bank of America Acct. #-5794 that same day.[12] The $4,000.00, to the extent that it was a petition-date receivable to anyone, was a receivable to Orange Watch, Inc. and not the Debtor individually.

(c) **Fixtures**. The Debtor testified that Orange Watch owns small fixtures, including a desk, a chair, a printer, a small refrigerator, a book-rack, and a microwave. The Debtor estimates that the petition-date value of these items totals $80.00.[13]

The Court finds that, as of the petition date, Orange Watch, Inc., owed the following outstanding liabilities:

(a) **Capital One Visa Business Card.** As of the Petition Date, the Business owed $456.69 to Capital One Bank, USA, N.A., on account of the Business's Capital One Acct. #-3734.[14]

(b) **Trade Debt to Kawa Motors, S.A.** As of the petition date, the Business owed a trade debt to Kawa Motors, S.A. in the amount of $3,328.40.[15]

(c) **Customer Deposits**. The petition-date bank balance in Orange Watch, Inc.'s Bank of America Acct. #-5794 was fully attributable to a customer deposit of $16,246.00 made on January 24, 2013. The Debtor testified that the January 24, 2013 Deposit[16] was paid to Orange Watch, Inc., by Kawa Motors, S.A., on account of two (2) Estimates dated July 18, 2011[17] and September 1, 2011[18] which totaled $32,075.22.

---

[11] **Exhibit W**, Check #1246 drawn on Redatex Corp.'s BB&T Checking Acct. #-7169 dated 4/27/12 made payable to Orange Watch, Inc., in the amount of $4,000.00. This reflects Redatex Corp.'s repayment to Orange Watch, Inc., of $4,000.00 that Orange Watch had previously paid pursuant to Check #1187 dated 10/18/11 (**Exhibit U**).

[12] See, e.g., **Exhibit X**, Bank of America Deposit Receipt dated 4/27/12 and showing the Deposit of Redatex Corp. Check #-1246 in the amount of $4,000.00 into Orange Bank, Inc.'s Bank of America Checking Acct. #-5794; and **Exhibit Y**, Statement dated 04/01/12 – 04/30/12 for the Bank of America Checking Acct. #-5794 held by Orange Watch, Inc., and reflecting the 4/27/12 deposit of Check #1246 from Redatex Corp. into Orange Watch, Inc.'s Bank of America Acct. #-5794.

[13] Joint Pretrial Stipulation [D.E. 34] at ¶10(b).

[14] **Exhibit Z**, Statement ending 1/26/12 for the Capital One Visa Business Card Acct. #-3734 held by Orange Watch, Inc., and reflecting that Orange Watch, Inc., owed $456.69 on this account as of the Petition Date (1/27/12).

[15] **Composite Exhibit AA,** Emails dated January 5, 2012; May 4, 2012; June 7, 2012; and June 13, 2012 from Marianela Rodriguez of Kawa Motors, S.A. ("*Kawasaki of Ecuador*") to Orange Watch, Inc., outlining that the amount due on Orange Watch, Inc's outstanding Trade Notes owed to Kawa Motors, S.A. is $3,328.40 as of January 5, 2012. This is attributable to a trade note issued during 2010.

[16] See, e.g., the 01/24/12 wire-transfer deposit of $16,246.00 from Kawa Motors, S.A., as reflected on page two (2) of **Exhibit R** (the Petition-Date Bank Statement for Orange Watch's Bank of America Acct. #-5794).

[17] **Exhibit S,** Orange Watch, Inc., Estimate #E103 dated 7/18/11 and sent to Kawa Motors, S.A., reflecting an estimated total cost of $24,059.72. The Customer Deposits received into Orange Watch, Inc.'s Bank of America Acct. #-5794 on 1/24/12 and 1/30/13 are attributable to Estimates #E103 and #E104.

[18] **Exhibit T**, Orange Watch, Inc., Estimate #E104 dated 9/1/11 and sent to Kawa Motors, S.A., and reflecting an estimated total cost of $8,016.00. The Customer Deposits received into Orange Watch, Inc.'s Bank of America Acct. #-5794 on 1/24/12 and 1/30/13 are attributable to Estimates #E103 and #E104.

The January 24, 2013 was the first deposit that Orange Watch received on account of these two Estimates. As of the petition-date, Orange Watch Inc. had an outstanding current liability of $16,246.00 attributable to the January 24, 2013 Customer Deposit.

Based upon the foregoing, the Court finds that as of the Petition Date, Orange Watch's liabilities (totaling $20,031.09) exceeded the value of its assets (totaling $15,392.28), and the business was insolvent within the meaning of §101(32)(A). It is undisputed that the Debtor's interest in Orange Watch, Inc., should have been listed on Schedule B, Item #13, as originally filed, however Amended Schedules[19] were filed shortly after the Debtor retained successor counsel, and the Amended Schedules accurately reflect the Debtor's interest in Orange Watch, Inc.

Irrespective of Orange Watch's petition-date insolvency, and in an effort to resolve all disputes regarding the business with the Trustee, the Debtor and the Trustee agreed to a global settlement of $7,500.00.[20] The Court finds that the Debtor's settlement with the Trustee is indicative of the fact that, even though the Debtor's interest in Orange Watch, Inc. was erroneously omitted from the Debtor's Original Schedule B, Item #13, the Debtor cooperated with the Trustee to bring value attributable to this asset into the Estate. The Evidence before this Court does not indicate that the Debtor concealed any information about his interest in Orange Watch, Inc., and this Court finds that the Debtor's failure to list his interest in Orange Watch, Inc., on Schedule B, Item #13 was an inadvertent omission made without any intent to hinder, delay or defraud creditors or the Trustee.

### *The $4,000.00 Check*

Much ado has been made in this case regarding the $4,000.00 check issued by Orange

---

[19] Amended Schedules B and C, and an Amended SOFA, were filed in the Main Case at D.E. 139 on June 19, 2013.
[20] See, e.g., Amended Order Granting Motion to Compromise Controversy [D.E. 142] at ¶11.

Watch to Pines Ford on October 18, 2011 (Check #1187).[21] The Plaintiff alleges that this Check evidences a petition-date receivable due to the Debtor individually, which the Plaintiff contends was wrongfully undisclosed on Schedule B, Item #16. To this end, the Plaintiff has directed the Court's attention to excerpts from transcripts of Rule 2004 Examinations of the Debtor where the Debtor makes reference to the Debtor's brother repaying the Debtor this $4,000.00.[22] The Court believes that these excerpts indicate Debtor was struggling to answer a question without the assistance of effective counsel. This does not change the fact that the documents presented, and introduced as exhibits by the Defendant, unambiguously show that this was a transaction between Orange Watch, Inc., Redatex Corp., and the Debtor's brother, and did not concern the Debtor individually.[23]

Moreover, the Defendant has produced documentation to show that this check was issued by Orange Watch, Inc. pre-petition,[24] and repaid to Orange Watch, Inc. post-petition.[25] This Court finds that, to the extent that the $4,000.00 Check #1187 drawn on Orange Watch's Bank of America Acct. #-5794 could be considered a petition-date receivable to anyone, it was solely a petition-date receivable to Orange Watch, and not to the Debtor individually. The Debtor was not owed $4,000.00 as of the petition date, and this $4,000.00 receivable was not property of the estate under 11 U.S.C. §541.

### *The American Express Payments*

---

[21] **Exhibit U**, Statement dated 10/01/11-10/31/11 for the Bank of America Checking Acct. #-5794 held by Orange Watch, Inc. Page two (2) of this Statement reflects that Check #1187 for $4,000.00 cleared Orange Watch's bank account on October 19, 2011. Page six (6) of this Statement contains an image of the actual check showing that Check #1187 was paid to "Pines Ford."
[22] See, e.g., Plaintiff's **Exhibit 7** at Pg. 141:16-144:5.
[23] See, e.g., **Exhibits U, V, W, X** and **Y.**
[24] Id.
[25] **Exhibit W**, Check #1246 drawn on Redatex Corp.'s BB&T Checking Acct. #-7169 dated 4/27/12 and made payable to Orange Watch, Inc., in the amount of $4,000.00. This reflects Redatex Corp.'s repayment to Orange Watch, Inc., of $4,000.00 that Orange Watch had previously paid pursuant to Check #1187 dated 10/18/11 (**Exhibit U**).

The Plaintiff has alleged that this Debtor dissipated thousands of dollars both pre-petition and post-petition by paying on an American Express Account that is not held in the Debtor's name. The Debtor testified that the Debtor's Cousin, Mr. Carlos Reyes ("*Carlos*") lives in Ecuador, and has a U.S.-based American Express account in his name. In order for Carlos to make payments on his U.S.-based American Express account, Carlos has two (2) options: (i) he can transfer funds by wire transfer to a U.S. Bank Account and pay a 5% fee to get the funds out of Ecuador, and then make payments from that account to American Express; or (ii) Carlos can bring cash from Ecuador to the United States without incurring a 5% fee, and give it to the Debtor to make payments on Carlos's American Express Account on Carlos's behalf. Debtor testified Carlos picked Option #2; to avoid this 5% fee incurred on transfers out of Ecuador, Carlos would bring funds to the Debtor directly. The Debtor testified that he would then either: (i) deposit the funds and use Carlos's funds to pay Carlos's U.S.-based American Express Account from the Orange Watch, Inc. Corporate Account; or (ii) use funds that were already on deposit in Orange Watch's account to immediately pay Carlos's U.S.-based American Express Account, and then use the cash from Carlos to purchase goods for export that Orange Watch was supposed to have purchased using the funds that had been on deposit in the Corporate Account.

The Court finds the Debtor's testimony on this point to be candid and credible. The Debtor's testimony at trial is consistent with the Debtor's testimony at the Rule 2004 Examination conducted on June 13, 2012 and again on February 27, 2013.[26] Additionally, the Court finds that all payments to American Express were made from the Orange Watch, Inc. Bank of America Checking Acct. #-5794. Therefore, to the extent that these payments to American Express constitute transfers within the meaning of 11 U.S.C. §101(54), the Court finds that they

were transfers of Orange Watch, Inc.'s corporate assets, which were made solely by the non-debtor entity Orange Watch, Inc. and not by the Debtor individually.

The Court notes that American Express has already entered into a Stipulation for Settlement with the Chapter 7 Trustee to resolve all disputes regarding the payments from Orange Watch, Inc., and this settlement has been approved by the Court in the Main Case. (Order Approving Settlement [Main Case D.E. 109] dated January 3, 2013.)

### *The Safe Deposit Box*

The Debtor testified that in early 2011 there was a break-in at the residence that he shares with his mother.[27] After the break-in, the Debtor's mother was scared that whatever possessions she had could be subject to losses due to theft, and the Debtor's mother asked the Debtor to open a safe deposit box for her.[28] The safe deposit box was opened on July 14, 2011 for the Debtor's mother to store items.[29] The Debtor testified that neither he nor Orange Watch, Inc. ever stored items in the safe deposit box, and that all items stored in the safe deposit box related solely to the Debtor's mother.[30] The Court finds the Debtor's testimony to be credible, and finds that there was no property of the Debtor or the estate located in the safe deposit box. Although this explanation regarding the safe deposit box was not initially listed on the Debtor's Original Statement of Financial Affairs, Item #12, the Court finds that the Debtor has been candid about the existence and contents of the safe deposit box, and notes that the Debtor filed an Amended SOFA #12 [D.E. 139] shortly after retaining successor counsel to correct the original omission.

---

[26] See, e.g., Plaintiff's Exhibit 7 at Pg. 156:8-157:7; Pg. 159:4-160:16 and Plaintiff's Exhibit 8 at Pg. 53:23-54:18.
[27] See Plaintiff's **Exhibit 8,** Transcript of February 27, 2013 Deposition of the Debtor, at Pg. 111:14-114:19.  See also **Exhibit L**, Letter dated May 4, 2011 to Yolanda Celi from Katherine Fernandez Rundle, State Attorney for the State of Florida, by Assistant State Attorney Leslie D'Anna, Esq.  This letter is concerning Broward County Case #J11002272 and Criminal Respondent Jonathan Omari Hall, relating to the break-in at the Debtor's residence.
[28] Id.
[29] See **Exhibit K,** Bank of America Secure Lock Self-Service Safe Deposit Box Rental Agreement dated July 14, 2011.  This reflects that Orange Watch, Inc., Fanny Celi (a/k/a Yolanda Celi, the Debtor's Mother), and Juan Carlos Reyes rented Box #521-9 on July 14, 2011.

### *The Debtor's Interest in Personal Property*

The Debtor lives in a rented single-family home with his mother, who purchased the majority of the items located inside of the home.  The Debtor's Schedule B, Item #4, as originally filed, attempted to outline the property that was owned by the Debtor and indicate that the remainder of the items in the home were owned by the Debtor's mother.  But this representation was convoluted, at best.  The Debtor has filed an Amended Schedule B, Item #4 [D.E. 139] to clearly delineate which items in the home are owned by him, which items belong to his mother, which items are fixtures belonging to the landlord, and which items were acquired post-petition.  The Debtor has stipulated to owning the contents of one bedroom, as well as some of the items located in the residence's living room.[31]  At Amended Schedule B, Item #4 Addendum "B," the Debtor provided a detailed list of all furnishings in the home that are owned by his mother.[32]  The Debtor has produced a copy of the lease for the residence[33] which contains a list of fixtures included with the real property, and which is consistent with the Debtor's declaration at Amended Schedule B, Item #4 Addendum "C" that the leasehold fixtures belong solely to the Landlord and not to the Debtor.  The Court finds that the Debtor has disclosed on Amended Schedule B, Item #4 [D.E. 139] all home furnishings which the Debtor owned as of the petition-date.  The Debtor's testimony regarding his ownership of this property is credible,

---

[30] Plaintiff's **Exhibit 8**, Pg. 114:16-19.
[31] Specifically, the Debtor's Amended Schedule B, Item #4, Addendum "A" reflects that the following property is owned solely by the Debtor:
    **Living Room:**  1 Desk (glass/wood – black); 1 chair (office-type/small); 1 sofa (cloth/white/L-shaped/fair condition); 1 Lenovo Laptop Model #B570; 1 loveseat (white/cloth/good condition).
    **Laundry Room:**  1 Pressure Washer (Homlite 2700)
    **Bedroom #1:**  1 bed (queen w/ headboard); 1 dresser (dark wood); 1 dresser (wood/dark and light); 1 TV (Sony KDL-3252010); 1 nightstand (silver/rounded)
[32] Amended Sch. B, Item #4 Addendum "B" [D.E. 139].  The Debtor has produced copies of invoices for the purchase of his mother's items on April 19, 2002 which were introduced as **Exhibit B** and **Exhibit C**.
[33] **Exhibit A**, Residential Lease for Real Property located at 14532 SW 140 Ct., Miami, Florida 33186 by and between Francie Filmore (Landlord) and Juan Carlos Reyes and Yolanda Celi (the Debtor's Mother).

and the Court finds that the Debtor has not made any false statements for the purpose of attempting to deceive or defraud creditors or the Trustee with respect to the personal property listed on Schedule B, Item #4.

### *The Security Deposit for the Debtor's Residence*

The Debtor and his mother rent their residence at 14532 SW 140 Ct., Miami, Florida 33186 pursuant to a written lease agreement, and they have resided in this property for several years. When the Debtor and his mother originally rented the property some years ago, the Debtor testified that they put down a $750.00 security deposit with their landlord,[34] 50% of which was attributable to the Debtor and 50% of which was attributable to the Debtor's mother. The Court finds that the Debtor's interest in the security deposit is therefore $375.00 as reflected on the Debtor's Amended Schedule B, Item #3 [D.E. 139], which was promptly filed after the Debtor retained successor counsel. This Court finds that the Debtor has not made any false statements for the purpose of attempting to deceive or defraud creditors or the Trustee with respect to the Security Deposit which is listed on Amended Schedule B, Item #3 [D.E. 139].

### *The Debtor's Personal Bank Account*

Pre-petition, the Debtor had a personal bank account at Suntrust Bank which was closed in December of 2011.[35] The Debtor testified that the Suntrust Account #-9254 was closed by the bank after the Creditor served the bank with a writ of garnishment for that account. Whatever balance of funds that was in the account was garnished, and the account was closed. The Debtor testified that since this occurred only about one (1) month pre-petition, he did not attempt to

---

[34] The most recent lease (**Exhibit A**, dated December 18, 2010) reflects only a $500.00 security deposit. The Debtor testified that he recalls a total deposit of $750.00, which is the value reflected on the schedules.

[35] See, e.g., **Composite Exhibit M**, Statements for Suntrust Bank Checking Account #-9254 held in the name of Juan Carlos Reyes from January 25, 2011 through and including February 22, 2012, and reflecting that the account was closed as of December of 2011.

open a new personal bank account prior to the Petition Date. The Debtor's testimony regarding the bank's closing of his personal bank account about one (1) month pre-petition due to garnishment is credible and fails to illustrate any malintent or malfeasance by this Debtor.

### *The Debtor's Income Is Clearly Ascertainable*

The Debtor testified that Orange Watch has no employees apart from the Debtor, and that Orange Watch does not pay the Debtor a regular salary. Instead, as a customary practice, the business pays certain personal expenses of the Debtor in lieu of paying the Debtor a salary. For example, the Debtor testified that instead of issuing him a salary check in a sum-certain, Orange Watch would pay (from its Bank of America Acct. #-5794) expenses of the Debtor, including such things as grocery bills and related cost of living expenses. The Debtor testified that this has always been how he receives payment from Orange Watch.

The Plaintiff believes that the Debtor's failure to report Orange Watch's income and business transactions on the Debtor's personal income tax return is indicative of malintent and dishonesty. The Court finds this argument unpersuasive and unsupported by the facts. Orange Watch, Inc. was a Subchapter C corporation, and for federal tax purposes the income and expenses of Orange Watch, Inc. did not need to be disclosed on the Debtor's personal income tax return.

This Debtor has produced three (3) years of personal income tax returns,[36] three (3) years of corporate income tax returns,[37] one (1) year of pre-petition personal bank statements for an account with limited activity,[38] and four (4) years of pre-petition business bank statements.[39] This Debtor has produced ample documentation to allow the Trustee and creditors to ascertain

---

[36] **Exhibits N, O** and **MM**.
[37] **Exhibits P, Q** and **NN**.
[38] **Exhibit M**.
[39] **Exhibits R, U, Y, HH, II, JJ** and **KK.**

his income.  To the extent that the Plaintiff relies upon the Debtor's prior testimony that he sometimes fails to deposit cash and instead uses that cash to pay for expenses,[40] or the fact that the Debtor was unable to provide the Creditor's counsel with an estimated calculation of the Debtor's income,[41] the Court fails to find that this demonstrates any malintent or malfeasance by this Debtor.  The Plaintiff's reliance upon this testimony is misplaced.

Additionally, the Debtor testified that between his own personal income tax return, and the corporate return filed by Orange Watch, Inc., the Debtor reflects all payments received, including those received in cash.  The Court finds the Debtor's testimony to be credible.  The Plaintiff's argument that the Debtor's income is unascertainable or not accurately reflected is without merit.

## CONCLUSIONS OF LAW

The Plaintiff seeks a denial of the Defendant's discharge pursuant to 11 U.S.C. §§727(a)(2)(B) and 727(a)(4)(A).  To sustain an objection to discharge, specific proof is required that clearly establishes intent on the part of the debtor to conceal assets, hinder and delay creditors, to make false oaths, or to conceal property.  Goldberg v. Berris (In re Berris) 458 B.R. 601, 606 (Bankr. S.D. Fla. 2011).  Such proof may not be by inference and must be positive.  Id. The provisions denying a discharge are generally construed liberally in favor of the debtor and strictly against the creditor.  In re Jones, 490 F.2d 452 (5th Cir. 1974).

### *The Plaintiff's Claims Under §727(a)(2)(B)*

In Count I of the Complaint, the Plaintiff seeks denial of Defendant's discharge pursuant to 11 U.S.C. §727(a)(2)(B), which provides:

> (a)The court shall grant the debtor a discharge, unless—

---

[40] Plaintiff's **Exhibit 8**, Pg. 17:24 to 18:2; Pg. 29:25 to 30:21; Pg. 81:16- to 81;21
[41] Plaintiff's **Exhibit 8**, Pg. 15:6 to 15:20.

>   (2)   The debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
>   […]
>
>   (B) Property of the estate, after the date of the filing of the petition;

Section 727(a)(2)(B) provides that the discharge of a Debtor may be barred when the Creditor proves that the Debtor made a transfer of property of the estate, after the date of the filing of the petition, with the intent to hinder, delay or defraud a creditor or the Trustee. To sustain an objection under §727(a)(2)(B), the Plaintiff must prove four (4) elements: a) there was a transfer; b) after the filing of the petition; c) of property of the estate; and d) by the Debtor with the intent to hinder, delay or defraud his creditors. See Petland, Inc. v. Unger (In re Unger), 333 B.R. 461, 470 (Bankr. M.D. Fla. 2005)(citing Colonial Bank v. Johnson (In re Johnson), 301 B.R. 590, 596 (Bankr. N.D. Ala. 2003)). To sustain an objection under §727(a)(2) and pursuant to Fed. R. Bankr. P. 4005, the petitioning creditor bears the burden of proving facts sufficient to deny discharge by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279 (1991). The Plaintiff has failed to prove that any transfers occurred after the petition date, of property of the estate, that the Debtor made with the intent to hinder, delay or defraud his creditors.

The Plaintiff argues that that the post-petition use of the $4,000.00 which Orange Watch, Inc. received from Redatex, Inc. on April 27, 2012 constitutes the Debtor's post-petition transfer of property of the estate with the intent to hinder, delay and defraud creditors or the Trustee. The Court finds this argument to be unavailing. The $4,000.00 Check from Redatex Corp. to Orange Watch, Inc. issued on April 27, 2012 was property of Orange Watch, Inc., not the Debtor, and as

such was not property of the estate within the scope of 11 U.S.C. §541. Additionally, Orange Watch, Inc.'s use of funds in the ordinary course of business does not constitute a post-petition transfer by the Debtor with the intent to hinder, delay or defraud creditors or the Trustee.

Accordingly, the Court finds that the Plaintiff has failed to sustain his burden of proving that the Debtor improperly transferred property of the estate post-petition, and the Plaintiff has further failed to meet his burden of proving that any such transfer was done by the Debtor with any intent to hinder, delay or defraud Creditor or the Trustee.

*The Plaintiff's Claims Under §727(a)(4)(A)*

In Count II of the Complaint, the Plaintiff seeks denial of Defendant's discharge pursuant to 11 U.S.C. §727(a)(4)(A), which provides:

> (a) The court shall grant the debtor a discharge, unless—
>
> (4) The debtor knowingly and fraudulently, in or in connection with the case—
>
> (A) Made a false oath or account;

To prevail under § 727(a)(4)(A), a Plaintiff must establish five elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with the intent to deceive or defraud; and (5) the statement related materially to the bankruptcy case. Citrus & Chem. Bank v. Floyd (In re Floyd), 322 B.R. 205, 214 (Bankr. M.D. Fla. 2005); Caterpillar, Inc. v. Gonzalez (In re Gonzalez), 302 B.R. 745, 754 (Bankr. S.D. Fla. 2003); Shappell's Inc. v. Perry (In re Perry), 252 B.R. 541, 549 (Bankr. M.D. Fla. 2000). "The objecting party must show by a preponderance of the evidence that the debtor made a false oath or account with either the intent to defraud or with reckless indifference to the truth." In re Sholdra, 249 F. 3d 380, 382 (5th Cir. 2001); Grogan v. Garner, 498 U.S. at 287; Comerica Bank v. Rajabali (In re Rajabali), 365 B.R. 702, 714 (Bankr. S.D.

Tex. 2007).

The Plaintiff alleges that the Debtor made false statements, with the intent to defraud creditors or the Trustee, with respect to the following: (i) the Debtor's ownership of Orange Watch, Inc.; (ii) the $4,000.00 check to Orange Watch, Inc.; (iii) the payments to American Express; (iv) the Debtor's ownership of a safe deposit box; (v) the nature of the Debtor's interest in personal property; (vi) the Debtor's interest in a residential security deposit; (vii) the Debtor's personal bank account; and (viii) the Debtor's income.

**(i)  Orange Watch, Inc.:**  Although Schedule B, Item #13 was initially filled out incorrectly, the Debtor has never concealed or disputed his ownership in Orange Watch, Inc. The Debtor's ownership of 100% of the shares of this business were disclosed on Amended Schedule B, Item #13 [Main Case D.E. 139], as soon as the Debtor retained successor counsel. Despite the fact that Orange Watch, Inc.'s liabilities exceed its assets, in an effort to resolve all issues regarding the disputed value of this business, the Debtor entered into a global settlement with the Trustee.  While it is undisputed that the Debtor's interest in Orange Watch, Inc. should have been listed on Schedule B, Item #13 as originally filed, this omission was proven to be inadvertent and a result of the inexperience of Debtor's prior counsel.  Nothing in the record indicates that the Debtor attempted to conceal his interest in Orange Watch, Inc., or otherwise made false oaths with the intent to defraud the Trustee or creditors.

**(ii)  The $4,000.00 Check to Orange Watch, Inc.:**  The Plaintiff's argument that the Debtor made a false oath or account by failing to list on Schedule B that Orange Watch, Inc., was owed $4,000.00 as of the Petition Date is a red herring.  To the extent that the $4,000.00 was a receivable to anyone as of the Petition Date, it was a receivable of Orange Watch, Inc., and not the Debtor individually.  Accordingly, the Court concludes that the Debtor did not make a false

oath or account with the intent to defraud creditors by failing to list this $4,000.00 check on Schedule B of the bankruptcy petition.

**(iii)** **The American Express Payments:** The payments made to American Express on the Debtor's Cousin Carlos's Account were made from the Orange Watch, Inc. Checking Acct. #-5794 to avoid a 5% fee incurred on transfers out of Ecuador. The Debtor testified that his cousin would send cash to the United States, and the Debtor would then either: (i) use Carlos's funds to pay Carlos's U.S.-based American Express Account from the Orange Watch, Inc. Corporate Account; or (ii) use funds that were already on deposit in Orange Watch's account to immediately pay Carlos's U.S.-based American Express Account, and then use the cash from Carlos to purchase goods for export that Orange Watch was supposed to have purchased using the funds that had been on deposit in the Corporate Account. All payments to American Express were made from the Orange Watch, Inc. Bank of America Checking Acct. #-5794. To the extent that these payments to American Express constitute transfers within the meaning of 11 U.S.C. §101(54), they were transfers of Orange Watch, Inc.'s corporate assets which were made solely by the non-debtor entity Orange Watch, Inc. and not by the Debtor individually. Accordingly, the Court concludes that the Debtor has not made any false oaths or accounts with the intent to defraud creditors or the Trustee with respect to the American Express payments.

**(iv)** **The Safe Deposit Box:** The safe deposit box was opened by the Debtor to assist his mother after a break-in occurred at the home the Debtor shares with his mother. The Debtor testified that he has never kept any property inside of the safe deposit box, and that the only person who ever kept items in the box was his mother. While the safe deposit box should have been listed on the Debtor's Statement of Financial Affairs, Item #12, as originally filed, it was not. However, SOFA #12 was promptly amended once successor counsel came into the case.

The Court therefore concludes that the Debtor did not make any false oaths with the intent to defraud creditors or the Trustee with respect to the safe deposit box.

(v) **The Nature of the Debtor's Interest in Personal Property**: The Plaintiff contends that because the Debtor indicated on his original Schedule B, Item #4 that the furnishings inside of his home were jointly owned, when in fact they were not, the Debtor's discharge should be denied pursuant to §727(a)(4)(A). The simple confusion in this case is that the Debtor shares his residence with his mother and owns only a portion of the furnishings inside of the residence. The Debtor has consistently identified which property inside of the home belongs to him, and which property inside of the home belongs to his mother. Once the Debtor retained successor counsel in this case, the Debtor filed an Amended Schedule B, Item #4 [Main Case D.E. 139] itemizing the property inside the home belonging to the Debtor, the Debtor's mother, and the Landlord, as well as the property inside the home which was acquired post-petition. The ambiguities arising from the representations on the Debtor's original Schedule B, Item #4 were due to inadvertence, and were quickly remedied once successor counsel was retained. As such, the Court concludes that there were no false oaths made with the intent to defraud creditors or the Trustee with respect to the personal property listed on Schedule B, Item #4.

(vi) **The Debtor's Interest in a Residential Security Deposit**: The Debtor and his mother lease the property in which they reside, and pursuant to that lease there is a security deposit of $750.00. The Debtor's one-half interest is $375.00. The Court finds that the Debtor's failure to list this $375.00 interest in the security deposit on Schedule B, Item #3, as originally filed, was due to inadvertence and mistake. The Debtor filed an Amended Schedule B [Main Case D.E. 139] promptly upon retention of successor counsel and disclosed his interest in the security deposit. As such, the Court finds that there was no false statement made with the intent

to defraud any creditor or the Trustee.

(vii) **The Debtor's Personal Bank Account:** The Debtor had a personal bank account at Suntrust Bank which was garnished by the Plaintiff a little over a month pre-petition. The Debtor testified that in the time between the garnishment and the petition date, he did not attempt to open any other personal bank accounts. This is consistent with the Debtor's schedules and statements. The Plaintiff has failed to set forth any basis for how this constitutes a false oath or account made with the intent to defraud creditors or the Trustee, and accordingly the Court concludes that the Plaintiff has failed to meet the burden for relief under §727(a)(4)(A).

(viii) **The Debtor's Income:** This Debtor has produced three (3) years of personal income tax returns,[42] three (3) years of corporate income tax returns,[43] one (1) year of pre-petition personal bank statements for an account with limited activity,[44] and four (4) years of pre-petition business bank statements.[45] This Debtor has produced ample documentation to allow the Trustee and creditors to ascertain his income. The Plaintiff has failed to prove that with respect to the Debtor's income, the Debtor made a false statement under oath with the intent to deceive or defraud. Accordingly, the Plaintiff has failed to carry his burden under §727(a)(4)(A).

For the foregoing reasons, the Court finds that the Plaintiff has failed to sustain his burden of establishing that the Defendant should be denied his discharge pursuant to 11 U.S.C. §§727(a)(2)(B) or 727(a)(4)(A). Accordingly, it is

ORDERED AND ADJUDGED as follows:

1. A Final Judgment on the Complaint will be entered in favor of the Defendant Juan Carlos Reyes on all counts.

---

[42] **Exhibits N, O** and **MM**.
[43] **Exhibits P, Q** and **NN**.
[44] **Exhibit M**.
[45] **Exhibits R, U, Y, HH, II, JJ** and **KK.**

2.  The Clerk of the Court is directed to issue a Discharge of Debtor in favor of Defendant Juan Carlos Reyes forthwith.

### 

Submitted by

ROBERT A. ANGUEIRA, P.A.
6495 SW 24 Street
Miami, FL 33155
Tel. 305-263-3328
Fax 305-263-6335
e-mail   rangueir@bellsouth.net

Copies furnished to:
Robert A. Angueira, Esq.
Richard L. Allen, Esq.

*(Attorney Robert Angueira is directed to serve copies of this Order upon all parties in interest upon receipt thereof, and to file a Certificate of Service with the Court confirming such service.)*